In the Matter of The ESTATE
OF Arthur JOHNSON Jr.,
Deceased,

No. 03–CV–71973–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 30, 2004.

Kenneth N. Hylton, Hylton & Hylton, Detroit, MI, Michael W. Davis, U.S. Department of Justice, Washington, DC, for Movants.

## ORDER GRANTING RESPONDENT'S "MOTION FOR SUMMARY JUDGMENT"

CLELAND, District Judge.

Pending before the court is Respondent United States of America's "Motion for Summary Judgment," filed on October 6, 2004. Respondent's' motion has been fully briefed and the court has determined that no hearing is required under Rule 7.1(e)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan. E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the court will grant the Government's motion.

### I. BACKGROUND

Petitioner Arthur Johnson, III, D.D.S., has been appointed as the personal representative of the Estate of Arthur Johnson, Jr., who died on October 3, 2002. Petitioner seeks dispersal of a portion of the proceeds from the sale of a home belonging to decedent to Mrs. Wilhelmina Johnson, Petitioner's mother, who was decedent's wife prior to a divorce in March 1987. In support of his request, Petitioner claims that Wilhelmina Johnson is entitled to one half of all proceeds of the sale of the couple's marital home, 19756 Strathmoor Road, Detroit, Michigan, less the first $10,700.00 as specified in the divorce judgment. (Pet'r's Ex. A.) The divorce judgment states:

> [I]t is ORDERED that the marital home, commonly known as 19756 Strathmoor, Detroit, Michigan ... shall be forthwith placed in the market for sale, and, after all costs of the sales of the property have been paid, the proceeds divided between the Plaintiff, WILHELMINA JOHNSON, and Defendant, ARTHUR JOHNSON, JR., with the first TEN THOUSAND SEV-

EN & 00/100 ($10,700.00) DOLLARS being awarded to the Defendant, AR- THUR JOHNSON, JR., and the balance being divided equally between the parties.

The home was sold to an unrelated third party on July 22, 2003 for $130,721.21, which was placed in an escrow account pursuant to the court's July 22, 2003 order. After the Johnsons' divorce, but before the sale of decedent's home, a Notice of Federal Tax Lien with respect to decedent's unpaid taxes for 1989, 1990, and 1991 (in the amount of $505,783.57) was filed with the Register of Deeds for Wayne County. The Internal Revenue Service ("IRS") discharged its lien on the property in favor of attaching the lien to the proceeds of the sale. (07/22/03 Order at 1.) Petitioner and the IRS now dispute whether the IRS lien against the proceeds take priority over Wilhelmina Johnson's right, if any, to a portion of the proceeds. There is no dispute that the IRS has a valid lien on the proceeds from the sale of the Strathmoor property.

Further, in his filing, Petitioner stated that Wilhelmina Johnson divested her interest in the Strathmoor property in 1987, approximately six months after the divorce, by deed to Arthur Johnson, Jr. (*See* Pet. at ¶ 6.)

On October 6, 2004, Respondent filed its "Motion for Summary Judgment."

## II. STANDARD

### A. Fed.R.Civ.P. 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-

moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id* at 252, 106 S.Ct. 2505 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing It, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003).

## III. DISCUSSION

■ The Government argues that Arthur Johnson, Jr. "owned the entire Strathmoor property when the federal tax lien attached, and thus the United States should receive all the proceeds from the sale of the property." (Resp't's Mot. at 4.)

26 U.S.C. § 6321 of the Internal Revenue Code provides that "if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. In addition, 26 U.S.C. § 6322 provides that "unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

The Government's authority to impose a tax lien is well established in case law. in *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), the Court stated that "the statutory language 'all property and rights to property,' appearing in § 6321 . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Id.* at 720, 105 S.Ct. 2919. (citing *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 90 L.Ed. 56 (1945)) Moreover, in *Glass City Bank,* the Court asserted that there was a plain intent to "subject to the lien 'property owned by the delinquent'

when suit is filed, rather than only that owned when the lien arose." Moreover, Section 6334(a) of the Internal Revenue Code exempts *only* the following from levy, and explicitly states that items not mentioned in the following list are not exempted from levy:

(1) Wearing apparel and school books.— Such items of wearing apparel and such school books as are necessary for the taxpayer or for members of his family;

(2) Fuel, provisions, furniture, and personal effects.—So much of the fuel, provisions, furniture, and personal effects in the taxpayer's household, and of the arms for personal use, livestock, and poultry of the taxpayer, as does not exceed $6,250 in value;

(3) Books and tools of a trade, business, or profession.—So many of the books and tools necessary for the trade, business, or profession of the taxpayer as do not exceed in the aggregate $3,125 in value;

(4) Unemployment benefits.—Any amount payable to an individual with respect to his unemployment (including any portion thereof payable with respect to dependents) under an unemployment compensation law of the United States, of any State, or of the District of Columbia or of the Commonwealth of Puerto Rico.

(5) Undelivered mail.—Mail, addressed to any person, which has not been delivered to the addressee.

(6) Certain annuity and pension payments.—Annuity or pension payments under the Railroad Retirement Act, benefits under the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll (38 U.S.C. 1562), and annuities based on retired or retainer pay under

chapter 73 of title 10 of the United States Code.

(7) Workmen's compensation.—Any amount payable to an individual as workmen's compensation (including any portion thereof payable with respect to dependents) under a workmen's compensation law of the United States, any State, the District of Columbia, or the Commonwealth of Puerto Rico.

(8) Judgments for support of minor children.—If the taxpayer is required by judgment of a court of competent jurisdiction, entered prior to the date of levy, to contribute to the support of his minor children, so much of his salary, wages, or other income as is necessary to comply with such judgment.

(9) Minimum exemption for wages, salary, and other income.—Any amount payable to or received by an individual as wages or salary for personal services, or as income derived from other sources, during any period, to the extent that the total of such amounts payable to or received by him during such period does not exceed the applicable exempt amount determined under subsection (d).

(10) Certain service-connected disability payments.—Any amount payable to an individual as a service-connected (within the meaning of section 101(16) of title 38, United States Code) disability benefit under—

(A) subchapter II, III, IV, V, or VI of chapter 11 of such title 38, or

(B) chapter 13, 21, 23, 31, 32, 34, 35, 37, or 39 of such title 38.

(11) Certain public assistance payments.—Any amount payable to an individual as a recipient of public assistance under—

(A) title IV or title XVI (relating to supplemental security income for the aged, blind, and disabled) of the Social Security Act, or

(B) State or local government public assistance or public welfare programs for which eligibility is determined by a needs or income test.

(12) Assistance under Job Training Partnership Act.—Any amount payable to a participant under the Job Training Partnership Act (29 U.S.C. 1501 et seq.) from funds appropriated pursuant to such Act.

(13) Residences exempt in small deficiency cases and principal residences and certain business assets exempt in absence of certain approval or jeopardy.—

(A) Residences in small deficiency cases.—If the amount of the levy does not exceed $5,000—

(i) any real property used as a residence by the taxpayer; or

(ii) any real property of the taxpayer (other than real property which is rented) used by any other individual as a residence.

(B) Principal residences and certain business assets.—Except to the extent provided in subsection (e)—

(i) the principal residence of the taxpayer (within the meaning of section 121); and

(ii) tangible personal property or real property (other than real property which is rented) used in the trade or business of an individual taxpayer.

26 U.S.C. § 6334(a)(13). The instant case does not involve any of the exceptions listed above. The tax lien does not concern a small deficiency, but rather a tax lien in the amount of $505,783.57. Therefore, the Strathmoor residence is not exempt from levy under the statute. 26 U.S.C. § 6334(a)(13).

■ In *United States v. Craft*, 535 U.S. 274, 283, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), the breadth of the Government's authority to impose a federal tax lien is

made clear. In *Craft*, the Court reached the issue of "whether the rights Michigan law granted to respondent's husband as a tenant by the entirety qualif[ied] as 'property' or 'rights to property' under § 6321." *Craft*, 535 U.S. at 283, 122 S.Ct. 1414. In *Craft*, the husband's rights in the estate at issue, "went beyond use, exclusion, and income. He also possessed the right to alienate (or otherwise encumber) the property with the consent of respondent, his wife." *Id.* However, In determining that the property at issue did indeed belong to the husband and was subject to the federal tax lien, the Court asserted that "there is no reason to believe, however, that . . . the right of unilateral alienation—is essential to the category of 'property.' . . . Excluding property from a federal tax lien simply because the taxpayer does not have the power to unilaterally alienate it would, moreover, exempt a rather large amount of what is commonly thought of as property." *Id.* at 284, 122 S.Ct. 1414. Likewise, in the instant case, the fact that Mrs. Johnson's divorce decree provided that she would receive half of the proceeds from the sale of the Strathmoor property after the decedent received the first $10,700.00, and Mrs. Johnson therefore had an interest in the property at one point in time, does not exempt the Strathmoor property from being counted as the decedent's property. Any "equitable interest" that Mrs. Johnson claims she had in the Strathmoor property as a result of her divorce decree is trumped by the Government's tax lien on the property. (Pet'r's Resp. at 9.) There is no evidence of any interest in the property with a higher priority than the Government's tax lien on the property.

The Johnsons' divorce decree provided that the Strathmoor property be sold and that decedent receive the first $10,700.00 in proceeds from the sale of the property, and that the remaining proceeds be shared equally between them. Mrs. Johnson quitclaimed her interest to decedent on Sep-

tember 28, 1987, and the decedent did not sell the Strathmoor property for an additional fifteen years. Therefore, decedent owned the entire Strathmoor property in 1995, when a federal tax lien was entered against him. As demonstrated by the case law discussed above, the federal tax lien reaches every interest in property belonging to decedent; therefore, the lien attached to the Strathmoor property.

Mrs. Johnson claims that she obtained a quitclaim deed for the purpose of selling the property. (Pet'r's Dep. at 16.) Mrs. Johnson has not presented any evidence that she was required to convey her interest prior to the sale of the Strathmoor property. Moreover, Mrs. Johnson admitted that the decedent did not provide to her, in writing, any "representation that he would sell the property," and decedent instead lived in the home for an additional fifteen years. (Pet'r's Dep. at 18.)

Based on the evidence presented, no reasonable jury could find in favor of Petitioner. Accordingly,

## IV. CONCLUSION

IT IS ORDERED that Respondent's "Motion for Summary Judgment" [Dkt. # 14] is GRANTED.